**LAW OFFICES OF JAMES J. CUTRO, PC**
**James J. Cutro (JC7174)**
**1199 Route 22 East, Suite 304**
Mountainside, New Jersey 07092
(908) 408-5600
(908) 408-5620
*Attorneys for Named Plaintiff and the FLSA and LAD Collective Plaintiffs*

**UNTIED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MACKENZIE LOUIS, on behalf of herself and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JUNIPER COMMUNITIES, JUNIPER VILLAGE OF CHATHAM, LLC, JUNIPER PARTNERS, LLC, LYNN SYSOCK, and ABC Corporations 1-5 (fictitious names describing presently unknown business entities).**<br><br>**Defendants.** | **INDEX NO.**<br><br>**Civil Action**<br><br>**<u>COMPLAINT</u>**<br><br>**FLSA COLLECTIVE ACTION**<br><br>**JURY DEMAND** |

Plaintiff, Mackenzie Louis, on behalf of herself and all others similarly situated, through her attorneys, the Law Offices of James J. Cutro, PC, brings this action against defendants, Juniper Communities, Juniper Village of Chatham, LLC ("Juniper Village"), Juniper Partners, LLC ("Juniper Partners") (collectively the "Juniper Defendants", Lynn Sysock, and Defendants ABC Corporations 1-5 (fictitious names describing presently

unknown business entities) (collectively "defendants" unless specifically designated), alleges as follows:

**NATURE OF CASE**

1. Plaintiff seeks reinstatement, front pay, back pay, compensatory damages, compensation for mental anguish, punitive damages, disbursements, costs, reasonable attorneys' fees, and pre-judgment interest, in order to redress the unlawful retaliation by defendants against plaintiff in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, et seq. (the "LAD"), and unlawful race discrimination directed by all defendants against plaintiff in violation of the LAD.

2. Plaintiff also brings this action against defendants to recover unpaid wage compensation, liquidated damages and reasonable attorneys' fees, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §201 et seq. (the "FLSA") and under the New Jersey State Wage and Hour Law, NJSA §§34:11-56a4, 34:11-56a20, 34:11-56a25 ("NJWHL"), to redress monetary deprivations in the plaintiff's, and collective plaintiffs, earned wages as a result of defendants' violations of statutorily mandated compensation provisions and record keeping requirements.

3. Plaintiff brings this lawsuit against defendants as a collective action on behalf of herself and all other persons similarly situated employees who suffered damages as a result of defendants' violations of the FLSA and the LAD pursuant to the collective action provisions of 29 U.S.C. § 216(b).

4. Defendants engaged in a policy and practice of (i) not paying plaintiff and members of the putative collective for all hours worked as required by applicable federal and New Jersey wage and hour laws (the "FLSA/NJWHL Collective Plaintiffs") and (ii) subjecting plaintiff and members of the putative collective to a hostile work environment in violation of the LAD because of their race — black (the "LAD Collective Plaintiffs").

5. The plaintiff has initiated this action on behalf of herself and similarly situated employees to recover the compensation that plaintiff and similarly situated employees were deprived of, as well as, compensatory damages, liquidated and/or treble damages, as applicable, attorneys' fees, and costs pursuant to the FLSA and NJWHL, and all damages available pursuant to the LAD.

**JURISDICTION AND VENUE**

6. The jurisdiction of this Court over this controversy is based upon 28 U.S.C. §1337 to enforce the provisions of the FLSA. Jurisdiction and venue are proper in the District Court of New Jersey because the plaintiff and the Juniper defendants do business in the State of New Jersey, and all the violations of the FLSA and the NJWHL alleged below were committed by defendants against plaintiff and the FLSA Collective Plaintiffs within the State of New Jersey, Counties of Morris, Union and Essex. This Court also has pendent jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367 since those claims are related to plaintiff's federal claims that form part of the same case and controversy.

7. At all times material hereto, plaintiff performed non-exempt duties for the Juniper Defendants on defendants' property located in Chatham, New Jersey. Defendants are therefore within the jurisdiction and venue of this Court.

8. At all times pertinent to this Complaint, the Juniper Defendants were and remain an enterprise engaged in interstate commerce or in the production of interstate goods for commerce as defined by the Act, 29 U.S.C. §§ 203(r) and 203(s). More specifically, defendants own, operate, and/or manage assisted living facilities. The Juniper Defendants purchase goods and materials from vendors in New Jersey as well as from other states throughout the country. Alternatively, plaintiff and those similarly situated employees worked in interstate commerce, i.e., its employees handle goods or materials that have been moved or produced in interstate commerce. Thus, the plaintiff and those similarly situated employees fall within the protections of the Act.

**PARTIES**

9. Plaintiff, Mackenzie Louis, is an adult citizen of the United States, and a resident of the State of New Jersey, County of Union.

10. Plaintiff formerly worked as a Wellness Nurse for the Juniper Defendants at Juniper Village of Chatham, reporting to defendant, Lynn Sysock, for the period from April 2023 through January 24, 2025, and has opted-in this lawsuit.

11. Defendant, Juniper Village of Chatham, LLC ("Juniper Village"), is a for-profit corporation duly organized under the laws of the State of New Jersey, having its principal office and place of business at 500 Southern Blvd., Chatham Township, New Jersey 07928, within the jurisdiction of this court where the defendant operates.

12. Defendant, Juniper Partners, LLC ("Juniper Partners"), is a for-profit corporation duly organized under the laws of the State of New Jersey, having its principal office and place of business at 400 Broadacres Drive, Suite 445, Bloomfield NJ, 07003 within the jurisdiction of this court where the defendant operates.

13. Defendants Juniper Communities and Juniper Partners regulate the employment of all persons employed by defendant Juniper Village and other properties and acts directly and indirectly in the corporation's interest in relation to the employees and is thus an employer of the plaintiff and similarly situated employees within the meaning of section 3(d) of the FLSA.

14. The Juniper Defendants employ employees in the activities of their enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000.00. Therefore, the employees are employed in an enterprise engaged in commerce or in the production of goods or commerce within the meaning of section 3(s)(1)(4) of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings the First and Second Claims for Relief as a collective action under the FLSA, §16(b), 29 U.S.C. §216(b), on behalf of all non-exempt persons employed by the Juniper Defendants on or after the date that is three years before the filing of this action ("FLSA Collective Plaintiffs").

16. Plaintiff brings the Fourth Claim for Relief as a collective action under the LAD, on behalf of all persons employed by the Juniper Defendants ("LAD Collective Plaintiffs").

17. At all relevant times, plaintiff and other FLSA Collective Plaintiffs and LAD Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to defendants' decisions,

policies, plans, practices programs, procedures, protocols, routines, and rules willfully failing and refusing to pay plaintiff and FLSA Collective Plaintiffs for all hours worked and subjecting them to a hostile work environment in violation of the LAD. The claims of plaintiff here are essentially the same as those of the other FLSA Collective Plaintiffs. and LAD Collective Plaintiffs.

18. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action under FLSA, §16(b), 29 U.S.C. §216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Juniper Defendants. Notices can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to defendants.

19. At all times set forth herein, the Juniper Defendants are employers within the definition of the Fair Labor Standards Act of 1938, §3, 29 U.S.C. §203, and plaintiff, and the FLSA Collective Plaintiffs, were and/or are at all times herein set forth, employees within the definition of said section.

20. At all times set forth set forth herein, the Juniper Defendants have been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §203.

21. At all times set forth herein, defendants were an employer within the definition of the NJWHL, *N.J.S.A. 34:11-4.1(a); 34:11-56a1(g)* and plaintiff, was at all times herein set forth an employee within the definition under the NJWHL, *N.J.S.A. 34:11-4.1(a).*

22. The Fourth Claim for Relief is properly brought under and maintained as an opt-in collective action under the LAD. The LAD Collective Plaintiffs are readily

ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Juniper Defendants. Notices can be provided to the LAD Collective Plaintiffs via first class mail to the last addresses known to Juniper Defendants.

## STATEMENT OF FACTS

***Background***

23. In April 2023, Juniper Village hired plaintiff for the position of Wellness Nurse in the Wellness Department for a six days per week/forty-hour schedule: from either 6PM to 2AM, or 5 PM to 1AM, but she would often work extra hours or days as requested by Juniper.

24. She reported to Defendant Lynn Sysock, the Wellness Director.

***Complaints of Patient Care Issues & Unauthorized Personnel Performing Nursing Services***

25. Immediately upon working at Juniper Village, she noticed serious patient care issues regarding facility sanitary conditions and nursing protocols and procedures the Wellness Director and defendants refused to follow that directly affected the health and welfare of the residents, including the death of some residents.

26. For example, on a routine basis Ms. Sysock ordered a medical technician to perform nursing procedures that she was not legally permitted to administer.

27. Nevertheless, the medical technician would treat residents suffering with complex wound issues.

28. Not surprisingly, residents frequently complained to plaintiff during her nighttime rounds about the procedures the medical technician performed on them during the day shift.

29. Plaintiff also witnessed the medical technician perform wound care on residents.

30. Ms. Sysock also instructed the medical technician to perform other nursing services that she had no training for and not legally permitted to perform.

31. Plaintiff repeatedly objected to the foregoing to Ms. Sysock, who replied: “I agree with you, but we need her. She’s a big help. She’s actually my right hand, my assistant. I don’t know what I would do without her help”.

32. The census was a big concern at Juniper.

33. So, to always keep the facility at full capacity, Juniper management frowned upon Plaintiff sending residents out to the hospital when medically warranted.

34. Nevertheless, plaintiff only sent residents to the hospital if her clinical judgment dictated that medical response.

35. Every patient she sent to the hospital for a particular ailment was for essential treatment that could not be provided by Juniper Village and supported by a physician diagnosis upon hospital admission.

36. Juniper management, however, was always upset with her if she did so because when she sent a patient to the hospital it would affect the census.

37. If residents were hospitalized, Juniper Village could not charge them.

38. Plaintiff complained about this to Ms. Sysock, telling her that ‘I took an oath to Do No Harm, to provide care. It’s people’s wellbeing first, then money’.

39. In response, she said, ‘I agree with you Makenzie, but I have to follow orders from my boss, Mrs. Janelle, the ED”.

40. Plaintiff explained to Ms. Sysock that 'the ED is not a nurse. She did not take an oath like we did. We nurses have a duty, a responsibility to render care at all times, first and foremost'.

41. Most disturbingly, Juniper Village had a pandemic in 2024 and it is plaintiff's opinion that Juniper Village lost some residents when it failed to provide proper care and send certain residents to the hospital because the census was more important than their wellbeing.

42. Residents were also routinely fed expired food so Juniper could maintain a low budget.

43. Residents were also not fed proper diets according to their health conditions.

44. For instance, residents that were hypertensive were served food high in salt.

45. The residents would complain over and over to staff.

46. Plaintiff also complained to Ms. Sysock and other Juniper management about this healthcare and resident treatment issues, but nothing was done.

47. In addition, aseptic procedures were not routinely followed to maximize profits.

48. Some residents' rooms were filthy because they were not capable of keeping their rooms clean and Juniper Village did not provide housekeeping services even though the residents were charged for that service.

49. Another major hygiene issue at Juniper Village among nursing staff and the Wellness director was hand hygiene.

50. Throughout plaintiff's employment she witnessed Ms. Sysock, as well as the nursing staff, providing care to residents, including wound care, with their bare hands — no sterile gloves being donned per aseptic health protocols.

51. These individuals would then come back to the office and continue to work without washing their hands, or turn on the faucet with their soiled hands, wet their hands for a few seconds, no soap applied, then treat other residents.

52. Plaintiff's opinion is that this poor hygiene practice contributed to a severe Norovirus outbreak that afflicted residents and their family members.

53. Plaintiff repeatedly complained how this unsanitary practice, in violation of state health law and other statutes, would cause bacteria and viruses to be passed from one client to another, but was ignored by defendants.

54. Plaintiff observed that there were almost always infection cases at Juniper Village.

55. Plaintiff and other co-workers repeatedly complained about these patient care issues to their supervisor, the Wellness Director, Ms. Sysock, individually and at staff meetings.

56. Nothing was done to remedy these patient care issues by Juniper.

57. Instead, plaintiff was labeled as a troublemaker (i.e., whistle blower), and defendants could not wait to get rid of her, and finally did so.

***Racially Hostile Work Environment***

58. Plaintiff and her co-workers were forced to endure a racially hostile work environment from Juniper Wellness Supervisor, Ms. Sysock, and Juniper residents.

59. Plaintiff repeatedly heard Ms. Sysock talk about the staff with derogatory and discriminatory comments.

60. For example, when she was making rounds with Ms. Sysock, residents complained about black staff not able to speak English fluently.

61. Ms. Sysock replied: 'I can't stand black people either but how many white people do you know would do this kind of job for this kind of pay? No one else would do it. Only the blacks are desperate enough to do it'.

62. On another occasion in the Wellness office, Ms. Sysock said that 'those black people are all over the place. It is very unfortunate that we need their services'.

63. Ms. Sysock would also repeatedly make similar statements to plaintiff and others about the healthcare and culinary staff that reported to plaintiff.

64. Plaintiff, a black woman, was deeply upset by these comments and the racially hostile atmosphere but felt an obligation to her residents and tried to improve the work environment buy it was to no avail.

65. Plaintiff also complained that there were no rules enforced by Juniper to ensure that staff were treated with respect by the residents.

66. The staff, including plaintiff, were constantly the target of racially discriminatory derogatory language from the residents — called "negroes", "boat people", "slaves".

67. Plaintiff and other staff advised management of this racially hostile work environment.

68. In particular, Ms. Sysock's racially demeaning and condescending treatment of staff.

69. Juniper did nothing to remedy the hostile work environment.

70. For example, one time a patient called a staff member "slave" and when Ms. Sysock was made aware of it, replied to Plaintiff: 'well, you guys were slaves at a time. She's not wrong. It's true'.

71. Neither Ms. Sysock, nor anyone at Juniper, ever took steps to address the racially hostile patient behavior or offer solutions for the staff that were subjected to it.

72. Furthermore, Ms. Sysock would not let plaintiff address the issue.

73. On March 13, 2024, plaintiff requested a meeting with Ms. Anne (Substitute ED) where the topic was discussed about Ms. Sysock's behavior, the resident disrespect, and the resident care issues.

74. Because the issues were not resolved, a second meeting took place on Tuesday, July 23, 2024, where an important topic was the racially discriminatory hostile work environment and Ms. Sysok's role in contributing and condoning to the discriminatory behavior.

75. There was no change after that meeting and the hostile work environment and resident care issues continued throughout 2024, with Juniper management refusing to do anything meaningful to address it.

76. On Friday, January 24, 2025, plaintiff was fired from Juniper.

77. Ms. Sysock viewed plaintiff as a ringleader because of all the complaints she leveled against her and Juniper Village and for that reason defendants terminated her.

***Failure To Pay Wages***

78. During her employment there were many discrepancies with plaintiff's paychecks and other employees' paychecks as well.

79. Plaintiff raised her concerns with Maria Salas in Human Resources, who responded: 'I warned you when you were hired that this would happen from time to time.' You need to keep an eye out.'

80. As Juniper Village management knew, the time clock always malfunctioned.

81. As a result, human resources came up with a backup system where they provided timesheets for missed punches.

82. So anytime the clocking machine failed to register a punch, plaintiff filled out a timesheet and took a picture of it on her phone.

83. The Juniper Village Defendants human resources were supposed to collect those timesheets for payroll so employees would be paid for all hours worked.

84. The timesheets, however, piled up in the Wellness office, and were rarely picked up by human resources.

85. Ms. Salas told plaintiff on several occasions, 'I know you're missing hours because you're almost always doing overtime. Please, count your hours and let me know what you're missing'.

86. Plaintiff submitted her hours, but Juniper Village still did not pay her for most of the hours she worked that were not recorded on the broken time clock.

87. As a result, plaintiff estimates that she is owed a significant amount of pay because Juniper Village did not accurately record her hours.

88. Plaintiff estimates that in 2023 Juniper Village did not pay her for 120 hours and in 2024 for 170 hours.

89. At all times pertinent to this complaint, Juniper Defendants failed to comply with Title 29 U.S.C. §§ 201-209, as well as applicable provisions of the NJWHL, in that plaintiff and those similarly situated employees performed services and labor for Juniper Defendants for which defendants made no provision to pay plaintiff and other similarly situated employees compensation to which they were lawfully entitled for their hours worked.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Claims by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs)**

90. Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. At all relevant times, Juniper Defendants have employed employees, including plaintiff and the FLSA Collective Plaintiffs.

92. Throughout the statute of limitations period covered by these claims under the FLSA, defendants knowingly and repeatedly failed to pay plaintiff and the FLSA Collective Plaintiffs wages for each hour worked in violation of the FLSA.

93. The defendants have failed to keep the required adequate records of the time worked by plaintiff and the FLSA Collective Plaintiffs in violation of the FLSA.

94. The aforesaid violations of the FLSA were willful within the meaning of 29 U.S.C. §255.

95. Under the provisions of the FLSA, there is due and owing from the defendants to plaintiff and the FLSA Collective Plaintiffs, compensation for said unpaid wages in an amount to be determined at trial, plus an additional equal amount as liquidated damages, plus

reasonable attorneys' fees and costs, and such other relief this court deems equitable and just.

**SECOND CLAIM FOR RELIEF**
**(NJWHL Overtime Claims by Plaintiff)**

96. Plaintiff, repeats, realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97. At all relevant times, Juniper Defendants have employed plaintiff.

98. Throughout the statute of limitations period covered by these claims under the NJWHL, defendants knowingly and repeatedly failed to pay plaintiff and the FLSA Collective Plaintiffs wages for each hour worked in violation of the NJWHL.

99. The defendants have failed to keep the required adequate records of the time worked by plaintiff and the FLSA Collective Plaintiffs in violation of the NJWHL.

100. The aforesaid violations of the NJWHL were willful.

101. Under the provisions of the NJWHL, there is due and owing from the defendants to plaintiff and the FLSA Collective Plaintiffs compensation for said unpaid wages in an amount to be determined at trial, treble damages, plus reasonable attorneys' fees and costs, and such other relief this court deems equitable and just.

**THREE CLAIM FOR RELIEF**
**(Hostile Work Environment under the LAD)**

102. Plaintiffs repeat each and every allegation of the Complaint set forth in paragraphs 1 through 101 as if fully set forth herein.

103. Plaintiff is an are employee as defined by the LAD.

104. The Juniper Defendants are employers as defined by the LAD.

105. The complained of conduct would not have occurred but for the plaintiff's race.

106. The conduct was severe and pervasive enough to make a reasonable black person believe that the conditions of employment were altered and the working environment was hostile and abusive.

107. Defendants unlawfully discriminated against plaintiff because she was required to endure a hostile work environment in violation of the LAD, and she was damaged.

108. The defendant employer, Juniper Village, knew or should have known, of the harassment and failed to take effective measures to stop it, and as such joined with the harasser in making the working environment hostile.

109. Juniper Defendants are liable for the conduct of defendant Sysock because she was a manager for Juniper Village who abused her supervisory powers by harassing plaintiff at work, where she controlled the work environment.

110. Defendants' conduct created a hostile work environment on the basis of the plaintiff's race that violates the LAD.

111. Defendants' conduct was willful, malicious and/or especially egregious and done with knowledge and participation of upper management.

112. As a result of the foregoing unlawful discriminatory practices, plaintiff demands entry of judgment against defendants' for compensatory and punitive damages, disbursements, attorney's fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

## <u>FOURTH CLAIM FOR RELIEF</u>
**(Hostile Work Environment under the LAD for the LAD Collective Plaintiffs)**

112. Plaintiff repeats each and every allegation of the Complaint set forth in paragraphs 1 through 112 as if fully set forth herein.

113. The LAD Collective Plaintiffs are employees as defined by the LAD.

114. Juniper Defendants are employers as defined by the LAD.

115. The complained of conduct would not have occurred but for the LAD Collective Plaintiffs' race.

116. The conduct was severe and pervasive enough to make a reasonable black person believe that the conditions of employment were altered and the working environment was hostile and abusive.

117. Defendants unlawfully discriminated against the LAD Collective Plaintiffs because they were required to endure a hostile work environment in violation of the LAD, and they were damaged.

118. The defendant employer, Juniper Village, knew or should have known, of the harassment and failed to take effective measures to stop it, and as such joined with the harasser in making the working environment hostile.

119. Juniper Defendants are liable for the conduct of defendant Sysock because she was a manager of defendant who abused her supervisory powers by harassing LAD Collective Plaintiffs at work, where she controlled the work environment, and failed to address the residents who also contributed to the hostile work enviornment.

120. Defendants' conduct created a hostile work environment on the basis of the LAD Collective Plaintiffs' race that violates the LAD.

121. Defendants' conduct was willful, malicious and/or especially egregious and done with knowledge and participation of upper management.

122. As a result of the foregoing unlawful discriminatory practices, the LAD Collective Plaintiffs demand entry of judgment against Juniper Defendants' for

compensatory and punitive damages, disbursements, attorney's fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

**FIFTH CLAIM FOR RELIEF**
**(Individual Liability Against Sysock under the LAD)**

123. Plaintiffs repeat and reallege paragraphs 1 through 122 above as though fully set forth at length herein.

124. Individual Defendant Sysock was the plaintiff's supervisor at all relevant times to this lawsuit.

125. Defendant Sysock knowingly gave substantial assistance or encouragement to Juniper Defendants in its unlawful harassment of plaintiff.

126. It is an unlawful discriminatory practice to aid, abet, incite, or compel any acts forbidden under the LAD.

127. Defendant Sysock, an individual defendant, in violation of the LAD, has deliberately instituted, or knowingly aided, abetted, incited, compelled or coerced the violation of plaintiff's rights under the LAD.

128. Defendant Sysock intentionally aided, abetted, compelled and coerced acts forbidden under the LAD by subjecting plaintiff to endure a hostile work environment in violation of the LAD, and she was damaged.

129. Defendant Sysock is also individually liable to the LAD Collective Plaintiffs.

130. As a result of the foregoing unlawful discriminatory practices, plaintiff and the LAD Collective Plaintiffs demand entry of judgment against defendant Sysock for compensatory and punitive damages, as well as attorney's fees, disbursements and costs incurred in this action, and for such other relief as this Court deems equitable and just.

## SIXTH CLAIM FOR RELIEF
## (CEPA)

129. Plaintiff repeats and realleges paragraphs 1 through 128 above as though fully set forth at length herein.

130. Defendants are employers under CEPA.

131. Plaintiff is an employee under CEPA.

132. Plaintiff reasonably believed that defendants were instructing her to violate laws concerning the protection of the health of the residents of defendants, the staff and their visitors.

133. During the course of her employment, plaintiff reported, complained, disclosed, objected to, and/or ultimately refused to participate in conduct, activities, policies and/or behaviors in violation of the law, health guidelines and rules to protect patient care, health and welfare.

134. CEPA provides protection for employees who report or object to employer conduct that they reasonably believe violates laws, regulations, or public policies, including those related to patient care.

135. In the context of patient treatment and care in an assisted living facility, CEPA specifically protects licensed or certified healthcare professionals who report or object to practices they reasonably believe constitute "improper quality of patient care," which includes violations of professional codes of ethics.

136. As a result of plaintiff objecting to participating in, and refusing to engage in the behavior she reasonably believed was illegal and unethical, plaintiff became the victim of acts of reprisal, including the termination of her employment by defendants.

137. Defendants engaged in the acts of harassment and retaliation against plaintiff, and ultimately caused plaintiff's discharge, in retaliation for plaintiff objecting to, refusing to

engage in, and reporting conduct that she reasonably believed to be unlawful and unethical and in contravention of clear mandates of public policy.

138. Defendants' explanations for terminating plaintiff's employment are pretextual.

139. Defendants are vicariously, strictly, and/or directly liable to plaintiff for an unlawful retaliatory discharge in violation of CEPA, pursuant to N.J.S.A. 34:19-1, et seq.

140. Individual Defendant Sysock had the authority to hire, fire, discipline, control employees' wages or control plaintiff's schedule.

141. Plaintiff reasonably perceived that the Sysock had the power to impact plaintiff's conditions of employment and plaintiff's work environment.

142. Individual Defendant Sysock had direct involvement in plaintiff's retaliation.

143. Individual Defendant Sysock aided in conduct that caused injury to plaintiff, and was generally aware of her role in the unlawful conduct, and Individual Defendant Sysock knowingly and substantially assisted in the unlawful conduct.

144. Individual Defendant Sysock's retaliatory and unlawful conduct, regardless of her supervisory role, imposes liability on herself and the Juniper Defendants under CEPA.

145. The acts of harassment and retaliation against plaintiff by defendants, including plaintiff's wrongful discharge, are in violation of CEPA, and are continuing.

146. As a result of such violation of CEPA, including her wrongful discharge, plaintiff has suffered and will continue to suffer substantial damages, including economic loss and emotional distress.

147. As a result of the foregoing unlawful discriminatory practices plaintiff demands entry of judgment against defendants individually and jointly for backpay, front-pay, lost benefits, compensatory and punitive damages, reinstatement, interest, attorneys fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, respectfully requests judgment against the defendants and the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b);

B. On the First Claim for Relief, a judgment for plaintiff and the FLSA Collective Plaintiffs against Juniper Defendants for compensation for said unpaid over-time wages in an amount to be determined at trial, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs, and such other relief this court deems equitable and just;

C. On the Second Claim for Relief, a judgment for plaintiff against Juniper Defendants for compensation for said unpaid wages in an amount to be determined at trial, treble damages, plus reasonable attorneys' fees and costs, and such other relief this court deems equitable and just;

113. On the Third Claim for Relief pursuant to the LAD, plaintiff demands entry of

judgment against Juniper Defendants for compensatory and punitive damages, disbursements, attorney's fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

131. On the Fourth Claim for Relief pursuant to the LAD, the LAD Collective Plaintiffs demand entry of judgment against Juniper Defendants for compensatory and punitive damages, disbursements, attorney's fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

D. On the Fifth Claim for Relief, plaintiff and the LAD Collective Plaintiffs demand entry of judgment against individual defendant Sysock for compensatory and punitive damages, as well as attorney's fees, disbursements and costs incurred in this action, and for such other relief as this Court deems equitable and just.

148. On the Sixth Claim for Relief pursuant to CEPA, plaintiff demands entry of judgment against defendants individually and jointly for backpay, front-pay, lost benefits, compensatory and punitive damages, reinstatement, interest, attorneys fees and costs incurred in this action, and for such other relief as this Court deems equitable and just.

E. On all claims for relief, pre-judgment and post-judgment interest, as provided by applicable law;

F. As such other and further legal and equitable relief as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiff and FLSA Collective Plaintiffs demand a trial by jury of all issues in this action.

Dated: April 29, 2026

Respectfully submitted,
**LAW OFFICES OF JAMES J. CUTRO, LLP**
*Attorneys for Named Plaintiff and the FLSA and LAD Collective Plaintiffs*

By: *James Cutro*
James J. Cutro (JC7174)